Good morning, Your Honors. May it please the Court, Reuben Eniguez, appearing on behalf of the petitioner, Ricky Lee Pearce. Your Honors, this federal habeas corpus case centers around the child hearsay provision of the Oregon Evidence Code, namely Oregon Evidence Code, Section 803.18a, subsection b. That rule provides a limited exception, and I stress a limited exception, to the general rule that hearsay is not admissible. Of course, that applies at the federal level as well, at all levels. Hearsay is not admissible, but there are exceptions. Here, what's important is that this limited exception does not allow child hearsay statements to be admitted at a trial, unless three specific criteria are met. The proponent of the hearsay, usually the State, has to give notice of its intention to admit that hearsay. It has to give timely notice of its intention. Fifteen days before trial is the time limit that the legislature set in Oregon. And finally, and this is what we're dealing with here, the last criterion, it has to identify for the adverse party the particulars of the statement. And that's what we're dealing with here, whether or not counsel in this case, the State, gave notice that was sufficient under 803. Okay? Now, what I have to note off the bat is this, the PCR code. The post-conviction court, State court, found this, quote, and this is at the excerpt of record, page 27, the notice by the State only referred to discovery without specifying specific statements. That's a finding of the post-conviction court. It's entitled to deference. And what that says is this. Under the law that was in effect at the time of Mr. Pierce's trial in 2010, it was already well established that the provision of discovery alone reports witness statements to the defendant whose defense was not sufficient, that was not adequate. What also was well established at the time of his trial is the fact that if you do not comply with this rule, this rule of exclusion, then no statement may be admitted. So if you don't comply with these three criteria, you're out. And here, the post-conviction court found the notice only referred to discovery, and it didn't specify specific statements. So you're out. So here's where I'll go next with this, is, you know, we're getting into this analysis of two cases that were decided after Mr. Pierce's case, right, the Chase case and the Wood case, 2011 and 2012 cases. And the State places great emphasis on that. Mr. Pierce is not relying on those cases. There, in fact, is no need to rely on Mr. Pierce to rely on those cases, because, as I say, in 2002, Leahy, Iverson, Sauer, McKenzie, all those cases already established the two propositions that I set forth, right? It's exclusionary. You can't admit it if you don't comply with the rules. And in at least one of those cases, the issue was not the timeliness, not the giving of notice of your intention, but the identical issue that we have here. That was all before Mr. Pierce's trial. What Chase, what Wood, and what the Oregon Court of Appeals in Hagberg did not recognize, I don't know why, when you read Hagberg, and I read it carefully, Hagberg, and I even read all the briefs, for some reason, none of the parties cited to the Court of Appeals the Olson case from 2008. And that's why, when you read Chase and you look for Olson, it's nowhere to be found. That is the distinguishing fact in this case. Before Mr. Pierce's trial in 2010, the Oregon Court of Appeals in Olson had already decided the issue here, and it made clear to competent counsel that this exclusionary rule, if the State does not comply with these requirements, you move. You move to keep it out. And why not? The best way not to deal with difficult evidence in any case is not to deal with difficult evidence. There's simply no strategic, no tactical reason for counsel not to object when you have this sort of an exclusionary rule that's entirely going to admit that evidence. And yet, that's what counsel failed to do. Now, the Olson case, you know, if we look at Olson, the language there in Olson, and I'll read from the case, the notice that the State provided to defendant in this case, Olson, did not provide any details about the evidence. And that was the objection. The objection, their counsel did object. The Court overruled the objection. But when a court tells you, the problem here is that they didn't provide any details. And when the statutory language says, you have to give the particulars of the statement, and in Iverson they used the word, the substance, language that would later be used in Chase, but we're not there yet, what more do you need, Your Honors? We all know my basic argument is this, the plain language of this statute says what it says. We all know what particulars means. Bill of Particulars, the Fourth Amendment, we're all well familiar with that language. And so when you have a court then in 2008 telling you the problem with this notice was it didn't give any details, and when you have other courts talking about specifics and substance, I'm sorry, but I fail to see what more counsel needs to know than that that has to be particular. Let me ask you this, counsel. I think you've made a very good argument as to Olson. Do you have any authority that would permit us to basically go where you want us to go? And what I mean by that is that you've pointed out that the Oregon courts maybe have not been entirely consistent on this issue, that they've overlooked this case. And when you look at, there's that 2015 case, I think it's called the Hagsburg. Hagsburg, yes. They don't really seem to get into Olson at all. How do we, as a federal court, we're in a sense interpreting state court law, how do we go where you want us to go and say, you know what, Oregon courts, clearly you're mixed up and therefore we're going to say what Oregon law is? Do you have a case that helps us get there? Your Honor, you know what, I would ask, off the top of my head, I do not. But I sure could find, I'll do my best to find one for you. Fair enough. But I would say, you know, based on this record, especially the record we're dealing with, is the case law in Oregon. And I think you're right again on the Hagsburg issue. Just like Chase. Wood is the case that discusses Olson. And what's interesting there, and that's why I'm asking you to take notice of the docket in the Wood case, because Wood is the case where the defendant actually used Olson as the basis for the objection. Yes, Your Honor. Counsel, we're talking about the competency of his attorney in what year? In 2010. The trial was in August of 2010. So what was the case law as of 2010? As of 2010, Olson was on the books, right? Correct. Two years prior. And Hagsburg wasn't. So the fact that Oregon's gotten it screwed up since doesn't detract from the fact that competent counsel should have been aware of what Olson required in 2010. That, I could not agree more, Your Honor. I mean, it's on the books. It's there. Like I say, I'm personally familiar with counsel. Counsel in that case is excellent counsel. I'm not sure why that case was overlooked. I don't know why the Court overlooked it, given its fairly recent publication. So I just don't know. I see that the yellow light's on. I did not ask to reserve time. I would like to reserve rebuttal time. Certainly. Thank you, Your Honors. Good morning, Your Honors. May it please the Court. Adam Holbrook on behalf of the State Superintendent. I had opening remarks prepared, but I think I'll just jump right into the Olson case and explain why, even if trial counsel, and I think we assume that trial counsel did, know about the Olson decision, not all reasonable counsel in 2010 would have objected to the State's notice in this case. And first, I think it's important to note that the notice in Olson provided no detail whatsoever. It didn't identify who gave or who made the statements at issue, which victim. It didn't identify to whom the statements were made. And it didn't even say that the State had provided the statements in discovery to trial counsel. You contrast that with the notice here, that the State gave, which did identify who made the statements, identified to whom the statements were made, and in some instances, the specific reports in which those statements could be located, and confirmed that the State had given all of the discovery in which those statements occurred to trial counsel. That is a much different notice, much more detailed notice than saying absolutely nothing, which was what the case, which was what the notice in Olson did. Well, that's just an extreme. Go ahead, Dr. Wardlaw. Go ahead. I was saying, that's just an extreme. You're saying, well, at least we gave them something and said, look at the disclosure. But it doesn't amount to what the statute requires, which is the particulars of how you're going to use those statements, who made them. That statute's there for a reason. Otherwise, of course, these statements are going to be disclosed in the discovery. And I don't see how you can just say, well, it's in the discovery. Go look for them. Go see where they are. And you know what they are. So why would we have the statute requiring particulars? Well, I think we have to put ourselves in the shoes of counsel in 2010. And what the statute says is that the State or whoever's offering the hearsay statements must make known to the adverse party the particulars of the statement. Now, the rule doesn't say you have to identify each specific statement. And, in fact, Oregon courts have later said that's not what you have to do. You have to provide generally the substance of the statement. So it's not clear when you have, when you look at the circumstances of this case. Trial counsel gets this notice three months in advance, reads the notice, has no question at all about which statements the State is referring to, knows precisely which statements the State is referring to. And you've got sort of this somewhat ambiguous rule that says the State just has to make known the particulars of the statement. Trial counsel is thinking, well, I know exactly which statements the State's talking about. It's not going to ring bells in all reasonable counsel that, hey, maybe I should object because this isn't detailed enough, even though I know exactly what they're talking about. And there was no case in Oregon by 2010 that had gone anywhere close to saying that the level of detail in the State's notice in this case was inadequate. That didn't happen until 2012 in Woods, or in the Wood case, where that notice was basically identical to the State's notice here. And even in that case, the Oregon Court of Appeals did not foreclose the possibility that that notice could be adequate under certain circumstances. Do you have a responsibility, if you're doing these types of cases, to be familiar with the law and the direction of the law and where things are going? And if there are cases where the rest of counsel who is trying these cases, they're objecting, they're preserving issues for appeals, do you think that if you're trying this case and you're going to trial with this case, even though you might have what you think, what you may be thinking is notice, you would still have a duty to object, at the very least to preserve the issue? I think that's a much more compelling argument if it was obvious at the time that that was, that this notice was deficient. And I think this is what makes this case kind of unique. In most Strickland failure to object cases, there's no dispute that the law established that trial counsel could have made an objection. The only dispute is over whether trial counsel made a strategic decision not to make a known objection. Here, we're one step removed. It wasn't clear under Oregon law at all that the State's notice in this case was deficient. And the fact that maybe one or two other exemplary defense attorneys did make the objection doesn't mean that all reasonable counsel would have made that objection. And under the deference we give to the State PCR court under AEDPA, that all fair-minded jurists would have found to the contrary. And I'd also just point out that I think it's important to note that trial counsel, even if trial counsel thought perhaps there's an objection here, even though no Oregon case said that, you still have to weigh the idea that maybe you're going to lose. And if you're going to make a motion in limine to exclude this evidence, you're going to have to stand before the trial court. And the trial court's going to ask you, how long have you had the notice for? And trial counsel's going to say, I've had it for three months, more than two and a half months before it was actually due. And the trial court's going to say, well, did you ask for any clarification? And counsel's going to say, no, I didn't. And trial court's going to say, do you have any doubt what the State is attempting to introduce here? And trial counsel's going to be forced to admit that, no, I don't. I know exactly what statements are at issue. And there is a risk, I think a not insubstantial risk, of losing some credibility with the trial court, especially if you do, as what Petitioner is saying in his reply brief, you wait it until trial, until jeopardy attaches and you try to sort of raise this objection, you know, when the evidence is being offered. This was a bench trial. And raising an objection at a bench trial under those circumstances where you've kind of been sitting on this notice and you haven't said anything and you don't have any question about what's at issue, I think does risk some credibility and could harm the client. Now, if the ‑‑ So, counsel, excuse me, why should we assume that he didn't have any question about what exactly was going to be the subject of the double hearsay? Well, there was a declaration from trial counsel that said precisely that, that the trial counsel had no question about what the State ‑‑ Well ‑‑ That's ER 504. Right, after the fact. But there were a lot of other error, I think a lot of other examples of deficient performance by this counsel in this case. One example being knowing that the judge's wife was the prosecutor who brought the indictment and still waiving the right to a jury trial and having the spouse of the prosecutor brought the indictment trying the case. I would think that's kind of a classic example of deficient performance, although I recognize it's not in front of us. With respect, Your Honor, that would be my response as well, is that it's not in front of this court. The issue is solely about ‑‑ Right, except that it is a fact that when you read this case as a whole, along with other ones, leads you to have a lot of concern about the competence of this counsel as a whole in this case, for whatever reason. I understand the court's concern, and I would say that the court's analysis here is limited just to this particular issue. It's the only issue. But I do think it's relevant because you're asking us to accept this affidavit by the same attorney who tried this case in the manner which Judge Wardlaw just described, but yet you're asking us to accept this affidavit and accept that she had absolutely no question whatsoever about these hearsay statements. I'm asking the court, I think the fair inference from the postconviction, the State postconviction court's decision is that it credited trial counsel And therefore, this Court would defer to that factual finding by the State postconviction court. That would be my response. I'll also point out, too, that there was an affidavit from the prosecutor in this case as well saying that this notice that was provided was consistent with the prosecutor ‑‑ that office's practice. That alone suggests that it was not understood across all defense attorneys that an objection should be made to this degree of specificity in the notice. Otherwise, the prosecution ‑‑ prosecutor's office wouldn't have had that practice anymore. And so I think there's just ‑‑ there's no case that, like I said, that by 2010 got anywhere close to saying that this notice was inadequate. And there are certainly facts in the record to suggest that, in fact, not all reasonable counsel would have thought that it was inadequate, including the prosecutor's statements, including the fact that trial counsel said that she wasn't confused at all about which statements were at issue. And with that, I see my time is running down. Is there any further questions? No. Thank you very much, counsel. Thank you. Roberts. I'd like to start off where Judge Wardlaw and Judge Marquez went, and that's with respect to defense counsel. What is before the Court is this, and I refer you to page 10 of my opening brief. Quote, "'Defense counsel Sarah Baldwin made only one objection during the entire trial. Her solitary objection concerned the form of a question that the State posed to Mr. Pierce. Counsel didn't object to the admission of any of the hearsay statements. To the contrary, she actually elicited further hearsay testimony herself, and I cite you to the record for that proposition.'" You know, when you look at these affidavits, the dueling affidavits that counsel referred to, what strikes me is how similar they are. They're actually saying virtually the same thing. We have a great relationship. We know each other. If she wanted to ask me any questions, she could have asked me questions. There was no confusion. You know, it strikes me as a form of willful ignorance to say, you know, our whole office even in this county, despite the fact that Olson's on the book, and I really didn't hear counsel discuss Olson, just referring to maybe Wood 2012, the fact is Olson was on the book. I don't see how an entire county prosecutor's office could say, we're totally unaware of this. You know, in my 25 years as defense attorney, what I'd say is this. I've learned one or two things. The State has tremendous power. This is a form of sandbagging. And what your argument that counsel is giving you is this. You know, no reasonable counsel, no reasonable counsel would have objected. And you contrast these notices. You contrast the notice in that case, the old case with our case, and our notice was so much better. But it's not. There's one insufficiency, and that is the particularity. You could talk about the fact that it listed witnesses and it referred to discovery and it referred to reports, but you know what else it referred to? Witnesses who didn't testify. And when you look at evidence that was introduced, like no physical evidence, no medical exams that were done, no forensic interview audio that was done, instead you introduce the hearsay statements instead, right? And what counsel supposedly knew so clearly what was going to be introduced, audio, video, reports, discovery, all of that was given to her. How do you know exactly what reports when you've got that sort of volume? I mean, I don't know the length of the audio, I don't know the length of the video, but for me to sit here and say, oh, I've listened to audio, I've listened to video, I know exactly what's coming in. No, there's not particularity here, not specificity, no details. This notice was poor. The PCR court found that. The evidence was not overwhelming. The court relied on this hearsay testimony to enhance the girl's credibility and for corroboration. Without that, we're only stuck with the two girls, one of whom had cognitive limitations, couldn't remember her own birthday. The evidence from the girls was not very persuasive at all. And I agree, other errors that unfortunately were not preserved, like waiving the right to a jury trial, not preserved, not here, but that's what this counsel was advising Mr. Pierce to do. I hope you rule for Mr. Pierce. Thank you. Roberts. Thank you very much, counsel. Thank you both for your argument. This case is submitted.
judges: Wardlaw, Owens, Marquez